Isabella G. Burns
vs.      Div. No. 15099
Robert E. Burns

May 8, 1926

BLODGETT, J. Heard upon petition for a separate maintenance filed by Isabella G. Burns, and a cross petition for an absolute divorce filed by Robert E. Burns, both petitioners alleging extreme cruelty.

The parties were married in 1904 and separated in 1922. There were no children from the marriage.

The petition of Robert E. Burns is denied and dismissed.

The acts of cruelty alleged by the wife extended over a period of many years previous to the separation. Only two acts of physical violence appear to be relied on by petitioner. Once was an incident over a telephone the petitioner was using, when she claims he seized the same out of her hand and pushed her against an ice box, injuring her back. The time when this occurred is not very clearly brought out, but apparently was several years prior to 1922. Petitioner claimed to have suffered for one year from the effect of this violence, but that the same left no mark. Dr. Grzebian attended her at some period at or about the time of this incident but his testimony as to any result from this alleged assault was simply as to certain complaints made by her and not as to any objective symptoms. The couple lived together for a long period after this incident, occupying the same bed, and it would seem to the court that this particular incident had long been condoned by the acts of petitioner.

The incident of July 4, 1916, as related by petitioner, was that he threw her out of the house, meaning that he opened the door of the house and told her to get out, and that she went and stayed away three weeks; that she returned and lived with him as before the incident. This happened six years previous to the last separation.

After the filing of the petition, the same was amended to include acts on the part of the respondent, alleging misconduct on his part with women other than his wife in violation of the marriage covenant.

It seems from the testimony that respondent, after the separation in May, 1922, financed to a certain extent a rooming house proposition on George street, Providence, owned and run by a Miss Burbery, or Mrs. Burbery, a woman who had obtained a divorce from her husband. Respondent was accustomed to go to this house and take his meals there, and spend much of his time there, where he roomed and took some of his meals. He also, from time to time, would take her for a drive in his car. His conduct in this respect was very indiscreet in the face of a pending petition for divorce. As to any act of misconduct on his part toward· this woman, there is not an atom of testimony, although petitioner employed two detectives to watch respondent, one of whom took a room in this same house on George street. Respondent is 64 years of age; belonging, to use his own words, "to the middle class," whatever that term may mean, and not a man of sensitive breeding. He is evidently, from his appearance in court and on the witness stand, a man of quick temper, and as quickly sorry for it.

The parties had been married about 18 years when the petition for separation was filed by the wife. The acts of cruelty complained of by her consist chiefly of his neglect to be a companion to her, and his absence from the home. . There was evidently some feeling on his part that his wife used his home and his money for the care and maintenance of her relatives, and that many of the disputes between them arose over this cause. There is further testimony that disputes arose between them over the sharing of his property on a fifty-fifty basis, and that she refused on certain occasions to relinquish her right of dower in certain real estate respondent desired to sell. The relations between them being not harmonious, the court feels she was justified in such refusal until fairly satisfied that she was being properly protected. There was testimony that on several occasions respondent agreed to share his personal property on such a basis and to place same in the hands of a trustee for her benefit. There were evidently compromises, looking not toward a reconciliation but toward an agreed separation.

The court does not feel it should in any way be made knowingly a party to such a proceeding, and if there appears any possibility that a reconciliation can be brought about between them, it should use all the influence possible to do so. This leads to a consideration of the testimony as to the conduct of respondent as to other women than his wife. The court feels that in cases of this kind the names of possibly innocent parties should not be brought into a case unless the testimony is of a most convincing character.

The petitioner in this respect was careless about her testimony. The question arose as to the time when the respondent met Miss Burbery, whether before or after the separation in 1922. Petitioner testified that some time before 1922 a Mrs. Sanborn and Miss Burbery called at her house, Mrs. Sanborn coming in and Miss Burbery remaining outside in the car, that her husband often called at the house of Miss Burbery previous to 1922.

Respondent emphatically denied that he ever knew or met Miss Burberry previous to January, 1923, and Mrs. Sanborn, a very respectable appearing elderly woman, absolutely denied ever calling at the house of petitioner with Miss Burbery, or that she ever met Miss Burbery and respondent together.

The court is inclined to believe that petitioner is mistaken in such testimony and is easily led into making inaccurate charges. Petitioner is evi-

dently a woman of good moral character, but too general in her statements, and apt to exaggerate. Respondent is not a man of high ideals or careful in his conduct, but there is no testimony which shows him to be an immoral man, or a very violent man. He is evidently impetuous and inconsiderate, but not bad or vicious. In view of the attempts made to fasten upon respondent immoral and improper relations with Miss Burbery or any other woman, by the employment of detectives, the court feels petitioner has failed to establish the same. There was testimony, for instance, of a Mrs. Harris, called by the petitioner, with reference to alleged visits of respondent to a tenement at 70 Plenty street occupied by Miss Burbery, which failed to show the time of such alleged visits, or that they actually took place, and there is a veiled hint in this testimony that a young man called upon Mrs. Harris to discover testimony as to visits of respondent.

It is the failure of such efforts that leads the court to believe that respondent did not meet Miss Burbery until after the separation. Apparently the most serious charge proved against respondent is that he is inconsiderate, extremely indiscreet and foolish.

. Married life requires mutual forbearance. There was an evident lack of mutual forbearance in the present case. Both petitioner and respondent profess a desire for reconciliation. The court feels that petitioner has failed to show such extreme cruelty or absolute misconduct on the part of respondent as would entitle her to a separate maintenance.

Petition dismissed.

For Petitioner: Peter C. Cannon, Peter L. Cannon and J. P. Hartigan.

For Respondent: Arthur L. Conaty, Cooney & Cooney and John P. Beagan.